U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 MAR 27 AM 10: 17

CLERK

BY____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JESSICA R.,                          )
                                     )
            Plaintiff,               )
                                     )
      v.                             )          Case No. 5:17-cv-236
                                     )
NANCY A. BERRYHILL, Acting           )
Commissioner of Social Security,     )
                                     )
            Defendant.               )

## OPINION AND ORDER
### (Docs. 7, 8)

Plaintiff Jessica R. brings this action under 42 U.S.C. § 1383(c)(3), requesting reversal of

the decision of the Commissioner of Social Security that Plaintiff is no longer eligible for

supplemental security income (SSI). (Doc. 1.) Currently pending is Plaintiff's motion to reverse

the Commissioner's decision (Doc. 7) and the Commissioner's motion to affirm (Doc. 8). For the

reasons stated below, Plaintiff's motion is GRANTED, and the Commissioner's motion is

DENIED.

### Background

On November 8, 2002, Plaintiff was found to be disabled and eligible for SSI beginning

February 1, 2002. (AR 27, 74–75.) She suffered from depression and learning disorders.

(AR 75.)

The Social Security Administration (SSA) conducted an initial continuing disability

review in 2015. (AR 76–77.) Plaintiff alleged that she continued to be disabled due to a learning

disability, anxiety, depression, attention deficit and hyperactivity disorder ("ADHD"), and anger

management issues. (AR 77.) Following its review, the SSA determined that Plaintiff was no

longer disabled as of January 9, 2015 and terminated her benefits. (AR 27, 76–82.) In her request

for reconsideration, Plaintiff stated that she also suffered from sciatica in her right leg. (AR 86.)
On reconsideration, Plaintiff was determined to be not disabled as of September 1, 2015. (AR
113.)

Plaintiff requested a hearing (AR 117), and Administrative Law Judge (ALJ) Paul Martin
conducted a hearing on August 4, 2016 (AR 44–73). Plaintiff appeared at the hearing and was
represented by paralegal Sara Williams. Plaintiff testified that she is unable to work due to
sciatica, chronic myalgia,[1] chronic fatigue, relapsing polychondritis,[2] a hernia, depression,
anxiety, and ADHD. (AR 60–67.) Vocational Expert (VE) Dennis King also testified. (AR 71–
72.)

During the hearing, Ms. Williams stated that the records appeared not to have medical
records needed to make a decision. (AR 46–48.) In particular, she noted that Family Psychiatric
Associates had not produced records for Disability Determination Services. (AR 47.) Ms.
Williams also asked for time to get a mental residual functional capacity assessment ("MRFCA")
from the Plaintiff's current treating source at Family Psychiatry Associates, James Greenleaf,
ARNP. (AR 51–52.) At the end of the hearing, ALJ Martin left the record open for two weeks
for Plaintiff to submit additional medical records, including from Mr. Greenleaf. (AR 72.)

On October 28, 2016, Ms. Williams notified ALJ Martin that she had electronically
submitted "a MRFCA and recent treatment records" from Mr. Greenleaf. (AR 261.) However,
these records were not exhibited as evidence for ALJ Martin's continuing disability review
(*see* AR 36–41), nor were they discussed in his unfavorable January 4, 2017 decision

---

[1] Myalgia is "[m]uscular pain." *Stedman's Medical Dictionary* 581020 (28th ed. 2006)
(Westlaw).
[2] Relapsing polychondritis is "a degenerative and inflammatory disease of cartilage
producing arthritis, collapse of the pinna, the cartilaginous portion of the nose, and the
tracheobronchial tree . . . ." *Stedman's Medical Dictionary* 708230 (28th ed. 2006) (Westlaw).

2

(*see* AR 27–35; *cf.* AR 30 ("All subsequent records after June 2014, with regard to her psychological treatment provider involve medication refills only.").)

In his January 4, 2017 decision, ALJ Martin upheld the cessation of benefits and found that Plaintiff was no longer disabled as of January 9, 2015. (AR 27–35.) Plaintiff then filed a request for review with the Appeals Council. (AR 156.) As a part of her initial appeal, Plaintiff submitted several pieces of additional evidence that the Appeals Council added to the record. (AR 4–5.) These submissions included an MRFCA and additional treatment notes from Mr. Greenleaf.[3] (AR 156–57, 264.)

The Appeals Council denied Plaintiff's request for review on September 27, 2017, making the ALJ's decision the final decision of the Commissioner. (AR 1–5.) The Appeals Council wrote: "We found no reason under our rules to review the [ALJ's] decision. Therefore we have denied your request for review." (AR 1.) The Appeals Council added: "You submitted reasons that you disagree with the decision. We considered the reasons and exhibited them on the enclosed Order of Appeals Council. We found that the reasons do not provide a basis for changing the [ALJ's] decision." (*Id.*) Plaintiff appealed to this court on November 28, 2017. (Doc. 1.)

## The ALJ's Decision

After determining that a claimant is disabled, the Commissioner periodically conducts a "continuing disability review" to reevaluate the claimant's eligibility to receive benefits. *See* 42 U.S.C. § 421(i); *see also* 20 C.F.R. § 416.994(a). The claimant's "benefits may be terminated if there is substantial evidence that the impairment has improved to such an extent that he is now

---

[3] According to Plaintiff's new counsel, Attorney Phyllis Rubenstein, this evidence was not added to Plaintiff's case file because Ms. Williams entered the wrong social security number when attempting to upload the records electronically. (AR 266.)

able to work." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also* 42 U.S.C. §

1382c(a)(4). Under the medical improvement standard, the claimant is entitled to a presumption

that she remains disabled unless the condition, governing statutes, or regulation change. *De Leon

v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984). The Commissioner bears

the burden of proving that the claimant is no longer disabled. *Id.*; *see also Waters v. Barnhart*,

276 F.3d 716, 718 (5th Cir. 2002) ("Under the medical improvement standard, the government

must, in all relevant respects, prove that the person is no longer disabled.").

Social Security Administration regulations provide specific procedures for determining

whether a claimant continues to be disabled. 42 U.S.C. § 416.994(b)(5)(i)–(vii). First, the

Commissioner considers whether the claimant's impairment or combination or impairments

meets or equals an impairment contained in the Listing of Impairments. *Id.* § 416.994(b)(5)(i).

Second, if the claimant does not suffer from such an impairment, the Commissioner must

determine whether there has been medical improvement in the claimant's condition.[4] 42 U.S.C.

§ 416.994(b)(5)(ii). Third, if there has been medical improvement, the Commissioner considers

whether the medical improvement relates to the claimant's ability to work, "*i.e.*, whether or not

there has been an increase in the residual functional capacity based on the impairment(s) that was

present at the time of the most recent favorable medical determination." *Id.* § 416.994(b)(5)(iii).

If the claimant's medical improvement is related to her ability to work, the Commissioner

---

[4] Medical improvement is defined as any decrease in the medical severity of the claimant's impairments. *Id.* § 416.994(b)(1)(i). The Commissioner determines medical improvement by evaluating "changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." *Id.* In order to make this determination, the Commissioner "must compare 'the current medical severity of th[e] impairment[ ] . . . to the medical severity of that impairment[ ] at th[e] time' of the most recent favorable medical decision." *Veino v. Barnhart*, 312 F.3d 578, 586–87 (2d Cir. 2002) (quoting 20 C.F.R. § 404.1594(b)(7)).

determines whether all of the claimant's current impairments in combination are severe. *Id.* § 416.994(b)(5)(v). If the claimant's impairments are severe, the Commissioner must assess the claimant's residual functional capacity and determine if she can perform past relevant work. *Id.* § 416.994(b)(5)(vi). Finally, if the claimant is unable to perform past work, the Commissioner determines whether the claimant can perform other work, given her residual functional capacity, past work experience, age, and education. *Id.* § 416.994(b)(5)(vii).

Employing that sequential analysis in his January 4, 2017 decision, ALJ Martin determined that Plaintiff's current medically determinable impairments include an affective disorder, an anxiety disorder, an attention deficient disorder, and degenerative disc disease of the lumbar spine. (AR 29.) The ALJ then concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*) The ALJ found that medical improvement occurred on January 9, 2015 (AR 29), and that this medical improvement relates to Plaintiff's ability to work (AR 30). The ALJ determined that, since January 9, 2015, Plaintiff has continued to have one severe impairment: lumbar degenerative disc disease. (AR 30.) The ALJ also found that Plaintiff "does not have a severe mental impairment or combination of mental impairments." (*Id.*)

Next, the ALJ concluded that, since January 9, 2015, Plaintiff has had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 416.967(b).[5] (AR 32.) Finally, based on Plaintiff's age, education, work experience, and RFC,

---

[5] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range

the ALJ determined that Plaintiff has been able to perform a significant number of jobs in the national economy since January 9, 2015. (AR 34.) The ALJ accordingly concluded that Plaintiff's disability, as defined in the Social Security Act, ended on January 9, 2015, and that she has not become disabled again since that date. (AR 35.)

## Standard of Review

The Social Security Act defines disability, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, the Commissioner may only terminate the claimant's benefits if there is substantial evidence that the claimant's impairment has improved to such an extent that she is now able to engage in substantial gainful activity. *Id.* § 1382(c)(4).

In considering the Commissioner's decision, the court conducts "a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also* 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). The "substantial evidence" standard is even more

---

of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Discussion

On appeal, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence. Specifically, she claims that the ALJ erred in finding that Plaintiff does not have a severe mental impairment for two reasons: (1) the medical evidence added to the record by the Appeals Council shows Plaintiff's mental impairments are severe; and (2) the ALJ failed to adequately consider the opinion of State agency psychological consultant, Ellen Atkins, Ph.D. (Doc. 7 at 3–5.) The Commissioner maintains that the decision is supported by substantial evidence and free of legal error. (Doc. 8 at 1.)

## I.     Additional Medical Evidence

Plaintiff's primary argument is that the opinion and additional treatment records of her treating psychiatric nurse practitioner, Mr. Greenleaf, contradict the ALJ's conclusion that Plaintiff's mental impairments are non-severe. (Doc. 7 at 3–4.) The Commissioner contends that "there is no reasonable probability that the additional evidence would have changed the outcome of the decision." (Doc. 8 at 6.)

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). "The only limitations stated in [20 C.F.R. §§ 404.970(b) and 416.1470(b)] are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision." *Id.* In this

7

case, the parties agree that the Appeals Council properly added Mr. Greenleaf's opinion and additional treatment records to the administrative record, as this evidence was new, material, and related to the relevant time period.[6]

"Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting 20 C.F.R. § 404.970(b)); *see also* 20 C.F.R. § 416.1470(b). "When the Appeals Council denies review after considering new evidence, [courts] simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46.

As an initial matter, the court notes that the proper focus of its review is the ALJ's decision. If the Appeals Council denies a request for review, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Lesterhuis*, 805 F.3d at 87 (citing *Perez*, 77 F.3d at 44). Because the Appeals Council declined to review Plaintiff's case, the court must focus its review on the ALJ's decision. *Id.*

The Commissioner argues that the ALJ's decision should be affirmed because the Appeals Council found that no basis to change the ALJ's decision and was not required to expressly consider the additional evidence in the notice denying Plaintiff's request for review.

---

[6] The court notes that the most recent treatment record from Mr. Greenleaf is dated January 10, 2017, postdating the ALJ's January 4, 2017 decision by six days. While this document was generated after the ALJ issued his decision, it nonetheless relates to the relevant time period because Mr. Greenleaf's notes bear on the severity and continuity of mental impairments that existed during the time period at issue in this case. *See Pollard v. Halter*, 377 F.3d 183, 193–94 (2d Cir. 2004).

(*See* Doc. 8 at 9–10.) As Plaintiff correctly attests, however, the Appeals Council's conclusions are irrelevant to the court's review. (*See* Doc. 9 at 2.) The sufficiency of the denial notice is not in dispute in this case. *Cf. Martinez v. Astrue*, 389 F. App'x 866, 868 (10th Cir. 2010) (rejecting argument that "the Appeals Council failed to properly consider evidence simply because it chose not to discuss the evidence in its order denying review"). Rather, the issue before the court is whether substantial evidence—including the evidence added to the record by the Appeals Council—supports the final decision of the Secretary. *Perez*, 77 F.3d at 46. As previously noted, once the Appeal's Council declined to review Plaintiff's case, the ALJ's decision became the final agency decision subject to judicial review. The Appeals Council's reasoning for denying review therefore has no bearing on the court's review of the Commissioner's decision. *See Pollard*, 377 F.3d at 192 (finding conclusion of Appeals Council in denial notice "is of no moment" because its "refusal to review [the plaintiff's] claim does not amount to a consideration on the merits").

The court will review the ALJ's decision as though the additional evidence submitted to the Appeals Council was before the ALJ. *See Larkins v. Barnhart*, 87 F. App'x 193, 194 (2d Cir. 2004) (summary order). Accordingly, the court begins by summarizing Mr. Greenleaf's additional treatment notes and opinion. The court then proceeds to review the ALJ's conclusions. Finally, the court reviews the ALJ's conclusions under the substantial evidence standard.

A.      **Mr. Greenleaf's Additional Treatment Notes**

Mr. Greenleaf's additional treatment notes document five appointments with Plaintiff between June 15, 2015 and January 10, 2017. (AR 476–93.) Mr. Greenleaf treated Plaintiff for depression, anxiety, and attention deficit disorder at each of these appointments and prescribed medication in the course of that treatment. (*Id.*)

The earliest appointment documented in Mr. Greenleaf's additional records took place on June 15, 2015. (AR 488.) At this time, Mr. Greenleaf assessed Plaintiff with mild depression. (*Id.*) Plaintiff reported "that her anxiety is in good control and she is functioning well." (*Id.*) She "describe[d] her mood as 'up and down.'" (*Id.*) Mr. Greenleaf noted that Plaintiff had "stopped taking Methylphenidate in order to 'see what I am like without it,'" but reported "lower energy and poor concentration since stopping [the medication]." (*Id.*)

On January 5, 2016, Mr. Greenleaf indicated he was seeing Plaintiff for the first time since June 2015. (AR 485.) He assessed Plaintiff with moderately severe depression. (*Id.*) Plaintiff reported that she was living in a homeless shelter, which increased her social anxiety symptoms because there were "too many people there . . . I can't be around it." (*Id.*) Plaintiff stated that she would spend the entire day in her car to avoid people. (*Id.*) Mr. Greenleaf further noted that Plaintiff had stopped taking Methylphenidate for attention deficit disorder about a month before the appointment due to unemployment and homelessness. (*Id.*)

Plaintiff's next appointment with Mr. Greenleaf took place on April 5, 2016. (AR 480.) Mr. Greenleaf assessed Plaintiff with moderate depression. (*Id.*) After finding housing, Plaintiff reported that "her mood and anxiety [were] in better control" due to "increased stability in her life." (*Id.*) He noted that Plaintiff "continues to struggle with 'going out in the public.' She can go grocery shopping but finds this a challenge." (*Id.*) Regarding Plaintiff's attention deficit disorder, Plaintiff was taking Methylphenidate again and found it to be "very helpful with cognitive/attention problems." (*Id.*)

On October 10, 2016, Mr. Greenleaf assessed Plaintiff with moderate depression. (AR 477.) Plaintiff reported that she "has been feeling more anxious lately, as she is worried that she may lose her SSI." (*Id.*) Additionally, Mr. Greenleaf noted that Plaintiff "continues to

struggle with 'leaving the house.' She rarely goes outside, but only if she 'has to.'" (*Id.*) While Plaintiff found Methylphenidate helpful with cognitive and attention problems, she "continue[d] to struggle with significant deficits." (*Id.*)

Finally, the additional records show that Mr. Greenleaf treated Plaintiff on January 10, 2017. (AR 491.) At that time, Mr. Greenleaf assessed Plaintiff with moderate depression. (*Id.*) Plaintiff reported "that she is feeling distraught and overwhelmed at having lost her SSI, and at the prospect of having to work after not having done so for 15 years. In addition her mood remains variable, with an increase in intensity due to the recent changes in her life." (*Id.*) Although Plaintiff found Methylphenidate helpful with her cognitive and attention problems, she "continue[d] to struggle with significant deficits." (*Id.*)

### B.   Mr. Greenleaf's Opinion

Mr. Greenleaf completed an MRFCA on October 27, 2016. (AR 473–75.) The two-page questionnaire posed questions about Plaintiff's mental abilities "within the context of [her] capacity to sustain that activity over a normal workday and workweek on an ongoing basis." (AR 473.) A matrix of check-boxes asked Mr. Greenleaf to rate Plaintiff's degree of limitation in mental activities within four categories: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (AR 473–74.) There were five check-boxes for each activity: not significantly limited, moderately limited, markedly limited, no evidence of limitation, and not ratable on available evidence.

Mr. Greenleaf assessed Plaintiff with moderate and marked limitations understanding and memory; moderate and marked limitations in sustained concentration and persistence; moderate limitations in social interaction; and marked limitations in adaptation. (AR 473–74.) Mr. Greenleaf explained that Plaintiff "has a documented deficit in intellectual [and] cognitive

functioning dating back to her childhood. She has not functioned in the work environment at any time [and] has significant social dysfunction." (AR 475.)

## C.    The ALJ's Analysis of Plaintiff's Mental Impairments

When evaluating the severity of mental impairments, the ALJ must "specify the symptoms, signs, and laboratory findings" substantiating the impairments and determine the claimant's degree of limitation in four functional areas. 20 C.F.R. § 416.920a(b)(1), (2). Known as the "paragraph B" criteria, the four functional areas include: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Id.* § 416.920a(c)(3). The first three criteria are rated as none, mild, moderate, marked, or extreme. If the ALJ rates all three as "none" or "mild," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" *Id.* § 416.920a(d)(1).

Here, the ALJ determined that Plaintiff "does not have a severe mental impairment or combination of mental impairments." (AR 30.) He reasoned that the record before him indicated Plaintiff "has not had any psychological treatment or therapy" since January 9, 2015, stating that her last appointment with Mr. Greenleaf was in June 2014. (*Id.*) The ALJ remarked that, at that time, Plaintiff had reported that her "anxiety and depression were 'stable' and in 'good control' with her current psychotropic medications" and was prescribed Ritalin. (AR 30; *see also* AR 355.) He further noted that "[a]ll subsequent records after June 2014, with regard to her psychological treatment provider involve medication refills only." (*Id.*) The ALJ concluded that Plaintiff's "lack of any psychological treatment, aside from her psychotropic medications, since January 9, 2015[] further confirms that her mental conditions are successful[ly] managed and

12

controlled with medication compliance and do not pose more than minimal, if any, limitations upon her ability to engage in basic work activities." (*Id.*)

The ALJ then analyzed the paragraph B criteria. (AR 30.) He found Plaintiff had "no limitation" in activities of daily living; "mild limitation" in social functioning; and "mild limitation" in concentration, persistence and pace."[7] (AR 31.) The ALJ further determined that Plaintiff had experienced no episodes of decompensation of extended duration. (*Id.*) In reaching these conclusions, the ALJ relied primarily on Plaintiff's self-reported activities and the November 25, 2014 report of consultative examiner Dean J.M. Mooney, Ph.D.

Apart from his conclusions regarding the severity of Plaintiff's mental impairments, the ALJ stated that "the following residual functional capacity assessment reflects the degree of limitation" identified in his analysis of the four functional areas. (AR 32.)

### D.     Substantial Evidence Does Not Support the ALJ's Decision

After reviewing all the evidence of record—including Mr. Greenleaf's opinion and additional treatment notes—the court concludes that substantial evidence does not support the ALJ's conclusion that Plaintiff's mental impairments are non-severe. An impairment is severe if

---

[7] The regulations explain that:

Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.

. . .

The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(4).

it "significantly limits [a claimant's] ability to do basic work activities." 20 C.F.R. § 416.920(c). "[T]he standard for a finding of severity . . . is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). To be considered "not severe," an impairment must be "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3P, 1996 WL 374181, at *1 (July 2, 1996); *see also Alexander v. Comm'r of Soc. Sec.*, No. 5:14-cv-00039, 2014 WL 7392112, at *6 (D. Vt. Dec. 29, 2014) (citing *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) and SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).

In light of the evidence added to the record by the Appeals Council, no substantial evidence supports the conclusion that Plaintiff's depression, anxiety, and ADHD are "slight abnormalities" with only a "minimal effect" on her ability to perform basic work activities. Mr. Greenleaf's additional treatment notes and opinion contradict the ALJ's findings in critical ways. The additional treatment notes demonstrate that Plaintiff received mental health treatment between June 15, 2015 and January 10, 2017, invalidating the ALJ's reliance on a lack of treatment records following January 9, 2015. Furthermore, Mr. Greenleaf's opinion indicates that Plaintiff has more than minimal limitations in her functional abilities. Because the additional evidence undermines the ALJ's prior assessment of Plaintiff's mental impairments, the court finds there is a reasonable possibility that this evidence would change the outcome of the decision.

> ### 1. Mr. Greenleaf's Additional Treatment Notes Contradict the ALJ's Finding that Plaintiff Had No Mental Health Treatment After January 9, 2015.

An ALJ must consider all relevant evidence and explain why evidence that conflicts with his conclusion was rejected. *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017) (citing

*Ceballos v. Bowen*, 649 F. Supp. 693, 702 (S.D.N.Y. 1986)); *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected."). As Plaintiff correctly observes, the ALJ relied on the lack of mental health treatment records after January 9, 2015 to find that Plaintiff had no severe mental impairments. (*See* AR 30.) The ALJ also relied on Plaintiff's "sparse psychological treatment history since January 9, 2015" to discredit the opinion of state agency consultant Ellen Atkins, Ph.D., who opined that Plaintiff had severe mental impairments. (AR 34.)

However, the record now shows Mr. Greenleaf treated Plaintiff for depression, anxiety, and ADHD on five occasions after January 9, 2015.[8] (AR 477–89.) In his additional treatment notes, Mr. Greenleaf repeatedly assessed Plaintiff with moderate depression. (AR 477–87; 489.) He also consistently noted that Plaintiff's anxiety makes it difficult for her to leave her home and interact with the public. (*Id.*) Additionally, the treatment records indicate that Plaintiff continued to experience "significant deficits" in attention and cognitive functioning despite taking Methylphenidate to alleviate her ADHD symptoms. (AR 477, 491.) This evidence contradicts the ALJ's conclusion that Plaintiff's "mental conditions are successful[ly] managed and controlled with medication compliance." (AR 30.)

Additionally, had the record before the ALJ included Mr. Greenleaf's additional notes, the ALJ might have assigned greater weight to Dr. Atkins's opinion that Plaintiff had severe

---

[8] The court also notes that the ALJ incorrectly stated that the record evidence at the time of the decision showed that Plaintiff last met with Mr. Greenleaf in June 2014. (*See* AR 30.) The record before the ALJ included treatment records showing that Plaintiff had an appointment with Mr. Greenleaf on October 22, 2014. (AR 416; *see also* AR 40 (list of exhibits considered in decision included the office treatment records of Family Psychiatry Associates from February 2014 through January 2015).)

mental impairments. In December 2014, Dr. Atkins reviewed the available medical records and assessed Plaintiff with "[m]oderate" limitations in activities of daily living; social functioning; and concentration, persistence, or pace. (AR 399.) Dr. Adkins also opined that Plaintiff was "[l]imited for contact with the general public." (AR 408.) This assessment of Plaintiff's functional limitations, if credited, could form the basis for a finding that her mental impairments are severe. *See Jenkins v. Comm'r of Soc. Sec.*, 769 F. Supp. 2d 157, 161 (W.D.N.Y. 2011).

The ALJ's failure to properly consider Mr. Greenleaf's additional treatment notes does not constitute harmless error. An error is harmless "[w]here application of the correct legal principles to the record could lead [only to the same] conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (second alteration in original) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Because it is not the role of the court to re-weigh the evidence, it is unclear whether the ALJ would have found Plaintiff was no longer disabled after considering Mr. Greenleaf's additional treatment records. Although the ALJ provided other reasons for his assessment of Plaintiff's mental conditions, the decision turns on his conclusion that a lack of psychological treatment after January 9, 2015 indicated her mental conditions were non-severe. Had the ALJ considered Mr. Greenleaf's additional treatment notes, it is reasonably possible that he would have found that Plaintiff had a severe mental impairment. This finding would have affected every subsequent step in the analysis. *Griggs v. Astrue*, No. 2:12-CV-4, 2012 WL 5904037, at *6 (D. Vt. Nov. 26, 2012). The ALJ also relied on the lack of recent psychological treatment records to find that Plaintiff had the RFC to perform the full range of light work, which in turn resulted in the ALJ's conclusion that Plaintiff was no longer disabled. Accordingly, "the court cannot say with confidence that the ALJ's reliance on a non-existent gap in treatment played only an inconsequential role in [his] ultimate disability determination." *Cheeseman v.*

*Berryhill*, No. 2:16-CV-00273, 2018 WL 1033226, at *12 (D. Vt. Feb. 23, 2018); *see also*

*Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (remanding where "it is not clear whether the

ALJ adequately considered the entire record" when evaluating severity of impairments); *cf.*

*Michaels v. Colvin*, 621 F. App'x 35, 37–38 (2d Cir. 2015) (remanding where ALJ failed to

consider treatment records that "directly contradicted" critical findings). The court therefore

concludes remand is necessary for consideration of Mr. Greenleaf's additional treatment notes.

The court rejects the Commissioner's contention that remand is unnecessary because Mr.

Greenleaf's additional notes are consistent with the ALJ's conclusion that Plaintiff's treatment

history is "sparse." (Doc. 8 at 6–7.) The ALJ did not merely refer to Plaintiff's psychological

treatment record as "sparse." Rather, the ALJ specifically based his analysis of Plaintiff's mental

impairment on a conclusion that "since January 9, 2015, the record evidence establishes that the

claimant has not had *any* psychological treatment." (AR 30 (emphasis added).) Mr. Greenleaf's

additional treatment notes directly contradict this conclusion. Therefore, the ALJ's finding that

Plaintiff's mental impairments are non-severe is no longer a reasonable interpretation of the

medical evidence in the record.

To the extent that the Commissioner argues that the ALJ's decision is supported by the

lack of evidence showing psychological treatment between October 2014 and June 2015 and

between June 2015 and January 2016, these lapses in treatment do not necessarily demonstrate

that Plaintiff's mental conditions are no longer disabling. "[E]vidence of symptom-free periods .

. . do[es] not compel a finding that disability based on a mental disorder has ceased" because

"[m]ental illness can be extremely difficult to predict, and remissions are often of uncertain

duration and marked by the impending possibility of relapse." *Roat v. Barnhart*, 717 F. Supp. 2d

241, 266 (N.D.N.Y. 2010) (quoting *Reals v. Astrue*, Civil No. 08-3063, 2010 WL 654337, at *1

(W.D. Ark. Feb. 19, 2010)). In this case, the medical evidence shows a pattern of improvement and then decline in Plaintiff's mental health. The ALJ's decision focused only on the period of improvement documented in Mr. Greenleaf's June 2014 treatment notes. (*See* AR 30.) While the ALJ inferred that a lack of psychological treatment demonstrated continued medical improvement after January 2015, the additional evidence shows that Plaintiff began seeking mental health treatment more frequently in 2016. *See O'Meara v. Comm'r of Soc. Sec.*, No. 2:13-CV-227, 2014 WL 4662423, at *7 (D. Vt. Sept. 18, 2014) (finding six-month lapse in therapy did not imply plaintiff's mental health condition improved where plaintiff attended therapy "at an increasingly frequent rate" during the relevant period). Mr. Greenleaf's notes during this period also indicate Plaintiff's mental health was progressively deteriorating. (*Compare* AR 477 (reporting on October 10, 2016 that Plaintiff "has been feeling more anxious lately") *with* AR 491 (reporting on January 10, 2017 that Plaintiff's "mood remains variable, with an increase of intensity").) Because the ALJ considered only part of the relevant evidence and did not address Plaintiff's period of decline, remand is necessary for consideration of Mr. Greenleaf's additional treatment notes. *See Roat*, 717 F. Supp. 2d at 263.

Furthermore, the ALJ has not considered whether Plaintiff had justifiable reasons for failing to seek treatment during these periods. As SSR 96-7P provides:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

1996 WL 374186, at *7 (July 2, 1996); *accord Coderre v. Astrue*, No. 2:11-CV-197, 2012 WL 2402028, at *9 (D. Vt. June 25, 2012); *see also Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (a claimant's refusal to undertake treatment must be "without justifiable excuse"). In this case, the record provides possible alternative explanations for the gaps in Plaintiff's treatment

18

records that the ALJ must consider. For example, the record indicates that Plaintiff moved to Florida around December 2014 (AR 47, 412), and experienced periods of homelessness in 2015 and 2016 (AR 65, 485). *See* 20 C.F.R. Part 404, Subpart P, App. 1, Subsection 12.00 (noting that homelessness "may make it difficult for [a claimant] to provide longitudinal medical evidence."); *cf. Cheeseman*, 2018 WL 1033226, at *10 (remanding where ALJ failed to address gap in treatment records resulting from plaintiff's move to Florida). Given these facts, if gaps in the treatment records affect the ALJ's assessment of Plaintiff's mental impairments on remand, the ALJ must consider any reasons for Plaintiff's failure to seek psychological treatment. *See Coderre*, 2012 WL 2402028, at *9.

### 2. Mr. Greenleaf's Opinion Undermines the ALJ's Conclusion that Plaintiff's Mental Impairments are Non-Severe.

An ALJ is required to consider every medical opinion in the record. 20 C.F.R. § 416.927(d)(2). Because a nurse practitioner is not an "acceptable medical source" under 20 C.F.R. § 416.913,[9] Mr. Greenleaf's opinion is not entitled to the same deference afforded to a treating physician or psychologist. 20 C.F.R. §§ 416.902, 416.913(a), (d)(1), 416.927(a)(2), (c)(2); *see Kohler*, 546 F.3d at 268–69. However, the opinions of other sources, including nurse practitioners, "are important and should be evaluated on key issues such as impairment severity and functional effects . . . ." SSR 06-03p, 2006 WL 2263437, at *45595 (Aug. 9, 2006). Mr. Greenleaf's opinion is therefore entitled to "some consideration," especially because the record in this case shows he has treated Plaintiff for depression, anxiety, and ADHD on a regular basis. *Kohler*, 546 F.3d at 268–69 (finding reversible error where ALJ failed to consider opinion of treating psychiatric nurse practitioner); *see also Reynard v. Colvin*, 220 F. Supp. 3d 529, 539–40

---

[9] Section 416.913 has been revised effective March 27, 2017. *See generally Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The court cites and applies the regulations that were in effect at the time of the ALJ's decision.

(D. Vt. 2016) (finding reversible error where ALJ failed to properly evaluate "other medical source" opinion).

Moreover, Mr. Greenleaf's opinion, if credited, demonstrates that Plaintiff's mental impairments had more than a minimal effect on her ability to work after January 9, 2015. For example, Mr. Greenleaf assessed marked limitations in Plaintiff's abilities to, among other things: "maintain attention and concentration for extended periods"; "complete a normal workday and workweek without interruptions from psychologically based symptoms"; and "perform at a consistent pace without an unreasonable number and length of rest periods." (AR 474–75.) Mr. Greenleaf also assessed moderate limitations in Plaintiff's abilities to, among other things: "interact appropriately with the general public" and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (*Id.*) These findings contradict the ALJ's conclusions that Plaintiff had no more than mild limitations in her functional abilities. (AR 31.)

The Commissioner argues that the ALJ's failure to address Mr. Greenleaf's opinion is, at most, harmless error. It is true that an ALJ's failure to address a medical opinion that would not have changed the outcome of the decision constitutes harmless error. *Zabala*, 595 F.3d at 409. On this record, however, the court cannot say that application of the correct legal standard would only lead to the conclusion that Plaintiff's disability ended on January 9, 2015.

The court rejects the Commissioner's argument that the ALJ did not need to consider Mr. Greenleaf's opinion because it conflicts with his treatment notes and lacks narrative detail. (Doc. 8 at 6.) "Genuine conflicts in the medical evidence are for the Commissioner to resolve," not the court. *Veino*, 312 F.3d at 588. While a lack of evidentiary support or narrative detail may be acceptable reasons for an agency decision discrediting Mr. Greenleaf's opinion, these were

not reasons provided by the ALJ. *See Jenifer S. ex rel. Ronald S. v. Comm'r of Soc. Sec.*, No. 2:18-CV-13-JMC, 2019 WL 102102, at \*9 n.4 (D. Vt. Jan. 4, 2019) ("The Court summarily rejects the Commissioner's argument that [a treating source's] opinions are 'uncorroborated by [her own] office notes . . . ,' as the ALJ did not make this finding." (internal citations omitted)). Because neither the ALJ nor the Appeals Council analyzed the substance of Mr. Greenleaf's opinion, the court "may not accept appellate counsel's *post hoc* rationalizations for agency action." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Moreover, the record does not include any contrary substantial evidence that supports the ALJ's conclusion that Plaintiff's mental impairments are non-severe. *See Lesterhuis*, 805 F.3d at 88. The Commissioner maintains that the report of consultative examiner Dr. Mooney provides sufficient support for the ALJ's findings. (Doc. 8 at 9.) However, as previously noted, it is the function of the Commissioner, not the court, to resolve evidentiary conflicts in the first instance. *Lesterhuis*, 805 F.3d at 88; *Veino*, 312 F.3d at 588. Because the additional evidence could influence the ALJ's assessment of the opinion evidence, Dr. Mooney's report is not necessarily dispositive.

"Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source . . . ." 20 C.F.R. § 416.927 (f)(1). Generally, where there are conflicting opinions between a consulting source and a treating source—including a treating nurse practitioner—the "consulting physician's opinions or report should be given limited weight." *Bedell v. Comm'r of Soc. Sec.*, No. 1:12-CV-126-JGM, 2014 WL 257856, at \*9 (D. Vt. Jan. 23, 2014) (quoting *Cruz*

*v. Sullivan,* 912 F.2d 8, 13 (2d Cir. 1990)). Additionally, the Second Circuit has noted that "ALJs should not rely heavily on the findings of consultative physicians after a single examination," especially where the claimant suffers from mental impairments. *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).

Furthermore, the regulations provide that the Commissioner must "request longitudinal evidence of [the claimant's] mental disorder when [her] medical providers have records concerning [her] and [her] mental disorder over a period of months or perhaps years." 20 C.F.R. Part 404, Subpart P, Appendix 1, Subsection 12.00; *accord Reynard v. Colvin*, 220 F. Supp. 3d 529, 539 (D. Vt. 2016). Only in the absence of longitudinal evidence will the Commissioner "use current objective medical evidence and all other relevant evidence available . . . to evaluate [the claimant's] mental disorder." 20 C.F.R. Part 404, Subpart P, Appendix 1, Subsection 12.00.

In this case, the ALJ did not consider the opinion of any treating source who could provide longitudinal evidence of Plaintiff's mental condition. Rather, the ALJ relied solely on non-medical evidence of Plaintiff's daily activities and the one-time report of consultative examiner Dr. Mooney, "who did not have a treatment relationship with the plaintiff and could not provide longitudinal evidence as required by the regulations." *Reynard*, 220 F. Supp. 3d at 539. As Plaintiff's treating psychiatric nurse practitioner, Mr. Greenleaf is the only medical source of record who maintained an ongoing relationship with Plaintiff regarding her mental health conditions. By contrast, Dr. Mooney only examined Plaintiff once. Under these circumstances, it is reasonably possible that the ALJ could afford greater weight to Mr. Greenleaf's opinion. *See, e.g., id.* (finding reversible error where ALJ only relied on non-treating examining physician and failed to consider opinion of treating therapist).

The agency's failure to consider probative opinion evidence "ordinarily requires

remand . . . where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." *Zabala*, 595 F.3d at 409 (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). Because Mr. Greenleaf found more severe restrictions than Dr. Mooney, the ALJ might have reached a different outcome had the ALJ considered Mr. Greenleaf's opinion. For example, Dr. Mooney's conclusion that Plaintiff retained "some ability" to understand and remember instructions is clearly inconsistent with Mr. Greenleaf's opinion that Plaintiff's ability to understand and remember even "very short and simple instructions" is "[m]arkedly limited." (*Compare* AR 386 *with* AR 473.) Accordingly, the court finds that remand is necessary.

The court notes that the ALJ might conclude on remand that Mr. Greenleaf's opinion is not entitled to any weight. But the determination of how much weight to give Mr. Greenleaf's opinion "should be made by the agency in the first instance," and the court "should refrain from 'affirm[ing] an administrative action on grounds different from those considered by the agency.'" *Lesterhuis*, 805 F.3d at 88 (quoting *Burgess*, 537 F.3d at 128); *cf. Padula v. Colvin*, 602 F. App'x 25, 28 (2d Cir. 2015) ("The possibility that benefits might properly be denied on a different basis on remand does not, however, mean that the Commissioner was substantially justified in arguing that the ALJ's initial decision, made without adequate record development, was supported by substantial evidence.").

## II.    Remaining Issues

Because the court has identified an error requiring remand, the court does not address Plaintiff's remaining argument that the ALJ failed to properly consider Dr. Adkins's opinion. However, on remand the ALJ should reevaluate the opinion evidence in light of the record as a whole, including the additional evidence discussed above.

## Conclusion

Because the ALJ did not consider relevant probative evidence, the court must remand for further administrative proceedings. *See Kohler*, 546 F.3d at 268 (remanding where "it is not clear whether the ALJ adequately considered the entire record" and "the [c]ourt cannot determine whether there is substantial evidence for the ALJ's conclusion"). Had the ALJ considered Mr. Greenleaf's opinion and additional treatment notes, it is reasonably probable that he would have found Plaintiff had severe mental impairments, which would have affected every subsequent step in the analysis. *See Griggs*, 2012 WL 5904037, at *6. The court may not weigh the credibility of the additional evidence or review the underlying matter *de novo. See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the sequential analysis provided by the SSA regulations.") (citation omitted); *Lesterhuis*, 805 F.3d at 88–89. Accordingly, remand is required so the ALJ may reconsider the entire administrative record, including the additional evidence submitted to the Appeals Council.

Plaintiff's motion to reverse the Commissioner's decision (Doc. 7) is GRANTED, and the Commissioner's motion to affirm the Commissioner's decision (Doc. 8) is DENIED. The case is REMANDED for further proceedings and a new decision.

Dated at Rutland, in the District of Vermont, this 27th day of March, 2019.

/s/ Geoffrey W. Crawford
Chief Judge, U.S. District Court